## CONNELLY v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Term.   June 22, 1903.)

1. MUNICIPAL CORPORATIONS—POLICE OFFICERS—AUTHORITY TO DIRECT MOVE-
MENTS OF TEAMS AND VEHICLES IN STREETS.

Greater New York Charter, § 315 (Laws 1897, p. 113, c. 378), directing
the members of the police force to "regulate the movement of teams and
vehicles in streets," does not authorize a police officer to direct a street
car motorman to use his car to push a coal truck blocking street car
traffic, and thus render the street car company liable for injuries sus-
tained by the officer because of the motorman's negligence in operating
the car while pushing the coal truck.

Appeal from City Court of New York.

Action by James A. Connelly against the Metropolitan Street Rail-
way Company.   From a judgment for plaintiff, and from an order
denying a motion for a new trial, defendant appeals.   Reversed.

Argued before FREEDMAN, P. J., and GILDERSLEEVE and
MacLEAN, JJ.

Henry A. Robinson, F. A. Gaynor, and Bayard H. Ames, for ap-
pellant.

John C. Robinson, for respondent.

MacLEAN, J.   The plaintiff assumed direction of the defendant's
servant and control of its machinery, which latter, not being adapted
to his wants, he supplemented with an improvised appliance.   He
was hurt, as he claims, through the negligent disobedience by the
servant of the orders given him, and has recovered a judgment.

For this the defendant was not liable, nor could he be made so
either by statute or by judicial legislation.   The versions of the acci-
dent, as testified to by the witnesses for the plaintiff and the defend-
ant, are not very dissimilar.   That most favorable to the plaintiff
was given by himself.   He was a police constable, and on the morn-
ing of the 4th day of December, 1901, he noticed on his post on Third
avenue that the cars were not moving, and going up there found a
big coal truck in such a position as to block both the north and south
bound tracks.   He ordered the driver to get out of the way, but the
street being slippery, and the grade upward, the beasts could not
budge their load.   Then the plaintiff placed a beam about five feet
long against the rear of the coal truck, and told the motorman very
distinctly to come up slowly until the bumper of the car touched
the rear end of the beam.   Then the policeman was to get out,
and the motorman was to push, and try and start the wagon.   He
heard the car start suddenly, looked up, and the car was coming
full speed.   It hit the end of the beam first, and smashed it all to
pieces, and jammed the officer up against the end of the car, which
was still pushing, with power on.   He had to walk four or five steps
before the motorman would turn off the power; so that he was
forced, between the car and the truck, to walk as best he could about
three or four steps—was, in fact, carried that far before the power
was shut off.   It was the plaintiff's duty, he said, to move the truck
off the tracks, and it was his suggestion to do it in that way.   He

84 N.Y.S.—20

put the heavy piece of wood against the back of the truck, and told the motorman to come on, and to stop the car when he hit the end of the bumper, which he did not do. The only thing he did not do as the plaintiff told him to do was that he started his car quicker than he was told to, and he did not stop it when it touched the end of the beam.

The plaintiff claimed to act as in duty bound under section 315 of the Greater New York Charter (Laws 1897, p. 113, c. 378), providing, in language used in statutes for nearly 40 years: "It is hereby made the duty of the police department and force, at all times of day and night, and the members of such force are hereby thereunto empowered to * * * regulate the movement of teams and vehicles in street." Under that statute, the plaintiff might direct the movements of defendant's vehicle to and fro, for the purpose of clearing the street, or keep it still altogether; but he could not utilize the motive power for the movement of other vehicles, nor could he direct the defendant's servant to put the vehicle to a use for which he was not employed, and to which the defendant had, so far as appears in these papers, never assented, expressly or impliedly. Whatever was necessary or proper for the service of the defendant was within the motorman's authority, but that was limited to its appropriate use. He was not authorized to depart from his defined function in order to operate the car in a manner foreign to the purpose of his employer. Pushing the coal truck up the grade was work which the motorman did primarily for the policeman, and in so doing he used the power and vehicle of the defendant for what was not contemplated either in its construction or operation or in his own employment. The motorman, it is true, denies that he was negligent, or that he in any wise disobeyed the instructions given by his incidental employer, the policeman. That matters not here, however, as his negligence, if any, was not the negligence of the defendant.

Judgment reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.